149 So.2d 118 (1963)
James W. SPEARS, Plaintiff-Appellant,
v.
The PHOENIX INSURANCE COMPANY, Defendant-Appellee.
No. 9836.
Court of Appeal of Louisiana, Second Circuit.
January 2, 1963.
*119 Barham, Wright & Barham, Ruston, for appellant.
Hayes, Harkey & Smith, Monroe, for appellee.
Before HARDY, GLADNEY and BOLIN, JJ.
BOLIN, Judge.
Plaintiff, president of Spears, Inc., a funeral establishment in Ruston, Louisiana, brought a direct action against defendant insurance company to recover damages for personal injuries sustained while accompanying an employee of Spears, Inc. on a call for ambulance service. From judgment in favor of defendant, plaintiff appeals.
We have examined with care the evidence adduced in the trial below, together with the written opinion of the trial court and, being impressed with the clear statement of facts and the correctness of the conclusion drawn therefrom, have adopted the opinion and make it the judgment of this court. The pertinent portion of the judgment and the reasons therefor are set forth below.
"The facts involved herein are not in dispute. The evidence shows that some time prior to October 4, 1961, Mr. James W. Spears purchased for the personal use of his wife a 1960 model Ford Country Sedan automobile and at that time obtained a policy of public liability insurance, being a family combination automobile policy issued to him by the Phoenix Insurance Company through the Sims Insurance Agency, Inc. of Ruston, Louisiana.
"For some reason, Mrs. Spears did not take this automobile as her personal automobile, and instead Mr. Spears, who operates the Spears Funeral Home in Ruston, transformed the same into an ambulance, installing thereon a blinker light and a siren. From that time on, Mr. Spears kept this vehicle at the funeral home in the possession of the funeral home employees, to be used as an ambulance and the same was, in fact, used on many occasions for that purpose.
"On the date of October 4, 1961, the employees of the funeral home received a call for an ambulance, they being told that some person had been *120 injured on one of the streets of the City of Ruston, near the James Building. As a result of the call, Mr. James W. Spears and Mr. Billy D. Mount, with Mr. Mount as the driver, jumped into the vehicle which had been converted into an ambulance and proceeded to the scene of the supposed accident.
"Upon arriving at the place where they had been informed the accident had taken place, Mr. Mount drove the vehicle to the right curb of the street and came to a stop. At about the same time Mr. Spears, who occupied the right side of the front seat of the vehicle, as a guest or passenger in said vehicle, opened the right front door and began an operation to alight from said vehicle. He had opened the door and had gotten out to the extent that his leg and his body were out of the vehicle, but the weight of his body was still on his right foot and leg, the other foot and leg not having become planted on the sidewalk so as to assume its portion of the weight. At exactly this moment, Mr. Mount, who had been looking back from his side of the vehicle in an effort to locate the injured party, was motioned by other parties to back his vehicle down the street a short distance to where the party requiring an ambulance was supposed to be located. Thus, Mr. Mount, without determining the position of Mr. Spears, began to back and at the same moment the opened front door struck the right leg of Mr. Spears, breaking the leg.
"Mr. Spears suffered a complete break of his right leg and as a result, suffered considerable injury and disability and required the placing of a pin in the bone of the right leg in order to repair the injury. As a result, he remained disabled for a considerable number of months and suffered great pain and discomfort.
"Mr. Spears is the principal stockholder in the funeral home known as Spears, Inc. He owns about ninety-five per cent of the stock in said corporation and the other two nominal stockholders were merely named as stockholder for the purposes of incorporation. For all normal purposes, Mr. Spears was the owner of the funeral home business and he was its full and complete manager and was in charge of every item of its business and activity. Mr. Mount was a salaried employee of Spears, Inc.
"Suit has been filed under the policy issued by the Phoenix Insurance Company for recovery under the policy on the following basis: the omnibus provisions of the policy provides that it covers not only the named insured or any member of his household but that it also covers any other person using such automobile, provided the actual use thereof is with the permission of the insured. Therefore, the contention of the named insured, James W. Spears, is that since Mr. Billy D. Mount was operating the vehicle with the permission of the named insured, that, therefore, under the omnibus provisions of the policy, Mr. Mount became the insured and Mr. Spears became a guest passenger in the vehicle, and, therefore, a third party as to the particular occurrence which took place in this connection.
"There seems to be no particular contention on the part of the defendant that this contention is not true, at least that Mr. Billy D. Mount, since he was operating the vehicle with the permission of Mr. Spears, became insured under the policy. Nor is there any apparent contention that the change of the use of the automobile would eliminate any liability unless such change is covered by the exclusionary provisions of the policy involved in this case.
"The policy in question has certain provisions which will be quoted. First, under the portion of the policy designated *121 as Part One relating to liability coverage we find the following:
"`This policy does not apply under Part 1: (a) to any automobile while used as a public or livery conveyance * * * (e) to bodily injury to an employee of the insured arising out of and in the course of * * *
"`(2) other employment by the insured.
"`(f) to bodily injury to any fellow employee of the insured injured in the course of his employment, if such injury arises out of the use of an automobile in the business of his employer.'"
"Likewise, the pertinent exclusionary provisions contained in Part II of the policy relating to medical services are as follows:
"`Exclusions: This policy does not apply under Part II to bodily injury:
"`(a) sustained while occupying (1) an owned automobile while used as a public or livery conveyance * * *'"
"Then under the provision relating to definitions, we find this provision:
"`Definitions. The definitions under Part I apply to Part II, and under Part II:
"`"occupying" means in or upon or entering into or alighting from. * * *'"
"Consequently, the questions presented for decision in this case are questions of law and not of fact and an examination of the law of this state fails to disclose any decision by the Courts of Louisiana defining the term `public or livery conveyance' and it is necessary, in determining whether or not the accident involved in this case is such as to be excluded from liability or whether or not the exclusionary provisions of the policy above quoted make it legally possible for the plaintiff to recover in this case.
"As has been above stated, there appears to be no decision of the Courts of this State defining the term `public or livery' conveyances, nor determining whether or not the exclusionary provisions with reference to the employee or fellow employee provisions of the exclusionary provisions of the policy have application in this case.
"In the interpretations of provisions of an insurance policy, it is well understood that such provisions should be given their usual and ordinary meaning and that such meaning should be gleaned from the policy itself rather than otherwise where the meaning is clear. It is also true that in the defining of ambiguous or uncertain provisions of any insurance policy that such provisions should be construed against him who wrote such provisions, for it was within the power of the writer to make its intention clear and where that is not done, the failure should be construed against the insurer rather than against the insured.
"In 30 ALR (2) 273 is found the following statement relating to the exclusionary clause above quoted:
"`The term "public conveyance" means a vehicle used indiscriminately in conveying the public and not limited to certain persons and particular occasions or governed by special terms. The words "public conveyance" imply the holding out of the vehicle to the general public for carrying passengers for hire. The words "livery conveyance" have about the same meaning.'
"It is the opinion of this Court that the meaning of the phrase `public or livery conveyance' means the indiscriminate holding out of a vehicle for public use and that in its broadest sense *122 is intended to cover such vehicles as taxicabs and buses which are used ordinarily for the purpose of public conveyances, but it is likewise the opinion of the Court that the meaning of the quoted phrase is not limited to taxicabs or buses, but that the same includes the using of any other vehicle where the operator uses the vehicle as a means of conveying members of the public, usually for a price, but without discrimination as to the persons within the class of persons to be transported, but indiscriminately for any who may call for such service.
"The case which has been cited to the Court entitled Clark v. Superior Lloyds of America, 147 S.W. (2) 1113 (Tex. App., 1939) is the only case that this Court has been able to find in which the clause was interpreted with reference to an accident which took place involving a vehicle used as an ambulance. In that case the Court of Texas makes the following statement:
"`The record herein shows conclusively that defendant in error insured a pickup automobile as distinguished from an "ambulance". Plaintiffs in error knew the distinction and recognized that an "ambulance" is a more hazardous risk than a "pickup" and carried a higher rate of insurance. The insurance policy expressly excludes any obligation of the insurer "(a) * * * while the automobile is used * * * as a public or livery conveyance as for carrying persons for a consideration * * * unless such use is specifically declared and described in this policy and a premium charged therefor * * *" Plaintiffs in error used the automobile in question as a livery conveyance for persons needing ambulance service, free of charge when unable to pay for its hire, as an advertisement of its undertaking business, and for a charge when such persons were able to pay. On the occasion of the accident, plaintiffs in error's agent or servant was operating the vehicle in question as an ambulance, making a hurried call to some person in need of such service, and, in attempting to cross a street intersection in the City of Dallas, while traveling at a very moderate rate of speed30 to 35 m. p. h.in disregard of a street `red-light' stop-signal, collided with another automobile, a truck coming from an intersecting street, resulting in damages to the ambulance.
"`The use being made of the vehicle at the time of the collision, and not the name by which it was designated in the policy, is the controlling feature. Evidently, the automobile was an ambulance at the time of the collision, operating under an ordinance of the City of Dallas which awards such vehicles the privilege of disregarding stop signals while sounding a siren warning of approach to a street crossing. It is undisputed that plaintiffs in error paid no additional insurance premium for use of the automobile as a livery conveyance for hire; consequently it was not covered within the contemplation of the policy of insurance * * *'
"As may be seen, the Texas Appellate Court clearly held that the use of a vehicle as an ambulance was to use the same as a public or livery vehicle or conveyance, and brought the same within the exclusionary provisions of the policy therein involved.
"It is the opinion of this Court that the accident in this case is also included within the exclusionary provisions of the policy in question and that the defendant is not liable under Part I for the damages which Mr. Spears has suffered in this case.
"The evidence in this case shows that Spears, Inc. kept the vehicle in question at its place of business in Ruston *123 at all times during the day, ready and subject to call at any hour or time for use as an emergency ambulance. The evidence shows, also, that under the direction and supervision of Mr. James W. Spears himself, the vehicle was carried home by himself or one of the employees of Spears, Inc. in order that it might be ready at any hour of the night to be called into service as an ambulance to be used for the transporting of injured parties, whoever they may be, to a sanitarium or to such place as was necessary for them to be carried. The evidence shows that although ambulance service is only an incidental service to the funeral home operation, that it was a service provided by this corporation and that it was provided indiscriminately to such persons as might call for the vehicle used as an ambulance and that it was held out and ready at all times and hours to transport those who might be sick or injured in accordance with the needs or desires of such persons. This indicates to the Court that this vehicle was, in fact and in truth, a public or livery conveyance and that, therefore, an accident which took place while the same was being used in such manner is not covered by the terms of the policy issued in this case.
"Likewise, under Part II of the policy relating to medical payments, the policy provides that the defendant shall not be responsible for the medical payments where the injury is sustained while occupying a vehicle used as a public or livery conveyance. There is no doubt in the mind of the Court but that Mr. Spears was, at the moment he was injured, in the process of alighting from the vehicle and that under the definitions of the policy, he was occupying the same, and having held that the vehicle involved was a public or livery conveyance within the meaning of the exclusionary clause of the policy involved, it is the judgment of the Court that there is no liability against the insurer for the medical benefits provided for in the policy. * * *"
The judgment rejecting plaintiff's demands is affirmed at appellant's cost.
Affirmed.