LAKESHORE DEVELOPMENT CORPO-
RATION, Lakeshore Motor Hotel, Inc.,
and Wilson P. Abraham, and Eugene Q.
Burris, Appellants,

v.

GULF INSURANCE COMPANY,
Appellee.

No. 22187.

United States Court of Appeals
Fifth Circuit.

Dec. 9, 1965.

J. Elton Huckabay, R. Gordon Kean, Jr., Sanders, Miller, Downing, Rubin & Kean, Baton Rouge, La., for Eugene Q. Burris.

A. G. Seale, Baton Rouge, La., for appellee.

Before WISDOM and COLEMAN, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

This action was brought by Gulf Insurance Company (Gulf), a Texas corporation, against various defendants[1] who are residents of Louisiana and Illinois. The prayer is for a Declaratory Judgment that Gulf's contract of public liability insurance with defendants Lakeshore Development Corporation and Lakeshore Motor Hotel, Inc., was not in effect at the time of an automobile accident which occurred on March 9, 1964. The basis for the claim is an exclusionary clause of the policy.

Summary judgment was granted by the lower court in favor of Gulf, and

---

1. The defendants are Lakeshore Development Corporation, Lakeshore Motor Hotel, Inc., Continental Insurance Agency, Inc., State Farm Mutual Insurance Company, Eugene Q. Burris, Henry Jones, Wilson P. Abraham, Margaret H. Abraham, Stanley LaFargue, and Rosemary Politz.

Lakeshore Development Corporation, Lakeshore Motor Hotel, Wilson P. Abraham (hereinafter collectively referred to as Lakeshore), and Eugene Q. Burris, a third party injured in the accident, have appealed. We reverse.

The facts are uncontroverted. Lakeshore Development Corporation operated a Chevrolet stationwagon, having obtained a policy of public liability insurance with Gulf which covered the vehicle and which subsequently was endorsed to include Lakeshore Motor Hotel as a named insured. The policy's designated use of the stationwagon was for "business and pleasure." The vehicle was used principally by the Motor Hotel for general business purposes, including use as a "courtesy car." As such this vehicle transported guests of the hotel to and from the local airport, and occasionally, to other points within the City of Baton Rouge, La. No fare was charged for this service.

March 9, 1964, an employee of Lakeshore Motor Hotel was involved in an accident while travelling in the stationwagon to the local airport intending to transport an incoming guest of the hotel from the airport to the Motor Hotel. Eugene Q. Burris, operator of another vehicle involved in the accident, was injured through alleged negligence on the part of Lakeshore's employee.

Anticipating a claim by Burris for personal injuries and property damage against it under the Louisiana Direct Action Statute,[2] Gulf petitioned for and received a Declaratory Judgment[3] that it was not liable to Burris or any other person for damages arising out of the accident by reason of the following provision contained in the policy:

"THIS POLICY DOES NOT APPLY:

(A) Except under Division 2 of Coverage C, while the automobile is used as a public or livery conveyance unless such use is specifically declared and described in this policy."

■ Thus the sole issue here is whether the use of Lakeshore's stationwagon as a "courtesy car," transporting hotel guests to and from the local airport and occasionally to other points, was an excluded use within the provision of the insurance policy excepting coverage "while the automobile is used as a public or livery conveyance." We hold that it was not.

As the applicable law is that of Louisiana, that jurisprudence is dispositive of the issue before us. However, cases from other jurisdictions will be discussed where pertinent. It is noteworthy that although a substantial number of cases deal with the question of whether a particular activity comes within the exception of a "public or livery conveyance,"[4] none has been cited or found dealing specifically with "courtesy car" use.

In Spears v. Phoenix Ins. Co., 149 So. 2d 118 (La.App.2d Cir. 1963), the insured, after buying a family automobile policy, converted his stationwagon into an ambulance. Pursuant to a call for ambulance service, the stationwagon arrived at the scene of a previous accident; shortly thereafter the plaintiff was injured by the negligence of the ambulance driver. The court rejected plaintiff's direct action against the insurer, holding the vehicle to be a public or livery conveyance within the policy exclusion. Clark v. Superior Lloyds of America, 147 S.W.2d 1113 (Tex.Civ.App.1939), involving an ambulance, reached a similar result. The rationale of these cases was that the vehicles involved were being put to a "public" use.

Hadrick v. Burbank Cooperage Co., 177 So. 831 (La.App.Orl.Cir. 1938), entailed a situation where a tractor and trailer were used to carry persons, who paid for the transportation, to a picnic. When

2. LSA–R.S. 22:655.

3. See 28 U.S.C. § 2201 et seq.

4. In the annotation at 30 A.L.R.2d 273, 275, the general rule is stated to be:
"While it is evident that in answering this question each case must be ex-

one of the 25 or 30 persons riding in the trailer was injured, it was held that there was no coverage since the vehicle was being used for "the carrying of passengers for a consideration," an excluded use under the policy. Likewise, in American Motorists Ins. Co. v. Moses, 111 Cal.App.2d 344, 244 P.2d 760 (1952), where the insured transported farm laborers for a charge in a truck, the use of which was stated to be "general hauling," it was held that the vehicle was used as a "public or livery conveyance," even as to one passenger who rode free. But in Stanley v. American Motorists Ins. Co., 195 Md. 180, 73 A.2d 1, 30 A.L.R.2d 268 (1950), it was held that when the insured's truck, stated to be used for business and pleasure, was furnished to transport members of a club to a picnic, the passengers actually paying the driver $18 for his services, it was not used as a "public or livery conveyance" within the exclusion of the policy.

In Travelers Ins. Co. v. State Farm Mut. Automobile Ins. Co., 175 F.Supp. 673 (E.D.La.1959), an employee was driving his private auto, carrying co-employees whose transportation expenses were reimbursed to the insured employee by the employer, when the plaintiff was injured. It was held that this type of payment by the employer for the other employees' transportation did not make the insured vehicle a "public or livery conveyance" or convict the insured of "carrying persons for a charge," within the exclusionary provisions of the policy. Cf. State Farm Mut. Automobile Ins. Co. v. Self, 93 F.2d 139 (5 Cir. 1937), in which the insured, after driving to one city on business, picked up five strangers to transport back, each paying a pro-rata of travel expenses. It was held, under Texas law, that the exclusion of liability "while anyone is being carried for a consideration" applied.

Thus it may be stated that in Louisiana "the phrase 'public or livery conveyance' means the indiscriminate holding out of a vehicle for *public* use and that in its broadest sense is intended to cover such vehicles as taxicabs and buses which are used ordinarily for the purpose of *public* conveyances, but \* \* \* that the meaning of the quoted phrase is not limited to taxicabs or buses, but that the same includes the using of any other vehicle where the operator uses the vehicle as a means of conveying members of the *public,* usually for a price, but without discrimination as to the persons within the class of persons to be transported, but indiscriminately for any who may call for such service." (Emphasis added.) Spears, supra, 149 So.2d at page 121. Although the holding in Hadrick, supra, may be somewhat inconclusive on the point here in issue since the policy provision excluded "the carrying of passengers for a consideration," that case when read in light of Travelers, supra, seems to indicate that the Louisiana courts would apply the exclusionary provision to single or irregular transportation of members of the "public" for a profit, if payment came directly from the persons so transported.

In Allstate Ins. Co. v. Normandie Club, 221 Cal.App.2d 103, 34 Cal.Rptr. 280 (1963), a case whose facts are similar to those here presented, an employee of the defendant club drove members to and from the club, for a charge which was retained by the employee. When a third party was injured during such a trip, the club's insurer brought an action for a declaration of non-liability under the policy's "public or livery conveyance" exclusion. In holding for the insurer the court seemed rather impressed with the insured's holding the vehicle out indiscriminately to members of the "public"— a rather wide class of persons, coming

amined in the light of the particular facts involved and the exact terms employed in the policy to exclude liability, the test generally applied by the courts, either expressly or by necessary implica-

tion, seems to be whether or not the insured vehicle has been held out to the general public for carrying passengers for hire, and at the time of the accident was actually so used."

and going from the club, who paid a fee specifically for the service.

Normandie Club, we feel, should be considered the high watermark for application of the exclusionary use provision. Although that case is factually somewhat similar to the present one, several factors serve to distinguish its holding. Primarily, the tenor of Louisiana jurisprudence seems to place more emphasis on the payment of compensation for the transportation service. Compare the Louisiana cases of Hadrick and Travelers, supra, with the California decision in American Motorists Ins. Co. v. Moses, supra. Coupled with the comparatively narrow segment of the public, selected by a predetermined standard, to which Lakeshore's "courtesy car" service was offered, this use does not become such an indiscriminate holding out to a wide class of persons so as to bring it within the excepted "public" use provision of the policy. Moreover, just as the affidavit evidence in the record indicates an attempt on the part of Lakeshore to discourage anything except a limited use of its courtesy car by its patrons, the same evidence shows a complete disclosure to Gulf's agent of the intended and actual use of the car by the hotel.

In oral argument, Gulf suggested that the reason underlying the excepted use of "public or livery conveyance" was the higher risk of loss incident to the carriage of persons in an insured's business. While we agree that there is a greater exposure to liability in the carriage of persons than things, such an argument should be addressed to the company's underwriting policy or perhaps its revision committee. If underwriters feel the "courtesy car" use presents a risk more nearly commensurate with that of taxicabs, they are free to refuse to insure without exacting a higher premium. But where the legal issue is drawn as clearly as it has been here, we find the conclusion inescapable that the business use to which this "courtesy car" was put was not like the "public or livery conveyance" use to which a taxicab, ambulance or similar vehicle is put. Lakeshore's stationwagon was used in its business and was not a "public or livery conveyance" within the meaning of the exclusionary provision of Gulf's policy.

The judgment of the lower court is reversed, and the case remanded with directions to enter judgment rejecting the complaint of Gulf Insurance Company.

Reversed and remanded.